This morning, number 065060, Aptel Services against the United States. Good morning, your honors. I have reserved five minutes for rebuttal. Do you have standing? Yes, we have standing.  Yes, we are a corporation. Can you help me through some of the flurry of information I've seen that calls that into question? My understanding from the California lawyers, and I'm not a California lawyer, is that Aptel has a general assignment under California law. The trustee remains essentially the corporation, so to speak. However, in this case, we not only would be entitled to an awarded contract, which is now based on time, highly unlikely, we would have standing to recover attorney's fees, bid preparation costs if the court determines to set aside a procurement and or disqualify King Aerospace. I'm not clear on what you're saying about standing, Judge Rader's question. It appears to us that your ability to conduct business as a corporation has been suspended under California law. The information I have from the lawyers in California is that there is a revival procedure. All of the tax returns have, in fact, been filed, and there is sufficient credit in the Secretary of State's office to pay the annual franchise taxes, which are at issue. I understand there's a revival procedure, but my understanding is that you need a certificate of revival in order to regain corporate status.  The lawyers in California have told me that the status of the corporation depends on the date of the general assignment, and as of the date of the general assignment, Abtel was an up-and-going corporation not suspended by the State of California. The suspension apparently took place in December of this past year. The general assignment was filed in June of this past year. So under California law, the status depends as of the date of the filing as it would in a Chapter 7 or a Chapter 11 of the general assignment. The general assignment was filed apparently in the courts in California in June of 2006, and in June of 2006, Abtel was not suspended. And the current information I have is that the current suspension is in error because the taxes have been paid. Well, it may or may not be an error, but my question goes to the fact that if it's an error, then you still need to get a certificate of revival in order to establish it. Don't you think you need to have a certificate of revival in order to maintain suit? Based on what the California lawyers have represented to me, the company is the same as filing a Chapter 7 or a Chapter 11. You have the status as of the date of the general assignment. You have the status as of the date of the filing of the bankruptcy. The status cannot subsequently be suspended because the trustee has the status as of the date of the filing of the general assignment. In fact, let us assume, for the sake of the argument this morning, that there is standing. If it is subject to further debate and briefing, we will receive it on the record. That would be fine. Is that satisfactory to the panel? And would you restart the clock, please? Thank you, Your Honor. Proceed, please. Your Honors, we are here based on conduct. The conduct of Abtel's competitor, King-Aristos. In this particular case, the... We're here to review what the Court of Federal Claims found. They found that there was absolutely no competitive disadvantage from the fact that King may have been in contact with some of your former personnel about events that happened five years before the 2004 bid. That's what we're dealing with. What is the error in what the Court of Federal Claims did? The essential error in what the Court of Claims did relates to the information that was obtained by King-Aristos. King obtained our 1999 proposal... And they said that the Court of Federal Claims said that was outdated, irrelevant information that provided no competitive disadvantage. How can we question that finding? You can question the finding by examining what the Court did and what the Court said. And in that particular case, the Court essentially relied on the discretion of the contracting officer, as a practical matter, to determine that it was stable. It contained proprietary financial information that had our general administrative rights and profit rights in the proposal. It showed the manner in which we did business. It showed our philosophy and how we proposed to award... Not award, but to perform this contract the way that we had proposed it. The 1999 proposal is not releasable under the Freedom of Information Act, and it was obtained unlawfully. The real issue is, if you have somebody's prior proposal, you learn a lot about how they write proposals. You can ghost certain issues. You can write with respect to certain issues and couple that with the information that was obtained from Mr. Wilbanks in January of 2004, a good deal prior to the release of the request for proposals. Wilbanks' information standing alone should be sufficient to disqualify King. It's the conduct of King. It's the unlawful conduct of King, which I believe that the lower court overlooked. There were no issues raised by the lower court with respect to conduct. The issue was drawing a considerable number of fine lines around the conduct to say that it was okay. In this particular instance, we think, I think... I can't blame anybody else for what I think. I'm a lawyer that practices law out in the field with government contractors coming to me every day and asking me, what can I do? Can I do this or can I do that? If this case stands, there is nothing that I can tell those folks what they can do for certain. Can you steal a prior proposal? Well, yes. This proposal was submitted. The information that you're saying they obtained improperly was submitted, put together and submitted in 1999, right? It was submitted in 1999. So the information was at least five years dated by the time they got it, right? It's the same essential... Just one more chance, one more question. Yes. It was submitted in 1999 for the 1999 procurement, which had one year and four option years. We were in the fourth option year when this material was obtained by King, and it was obtained by paying a price to a former employee, the former owner of Abtil, in violation of a non-disclosure and non-compete agreement. Well, that's not necessarily relevant to us. I mean, that may give you a cause back to your son or the wife and others. Our only question is whether or not this violated the Procurement Integrity Act, correct? The Procurement Integrity Act is one basis for disqualification, as this court has previously held in the compliance case and the... I always confuse the acronym. I apologize, Your Honor. But in both of those cases, the court looked at not only the information that was obtained but the appearance of impropriety with respect to the entire procurement system. And here we have a proposal being obtained unlawfully. King viewed, when they obtained it, that it was unlawful. They got it. They reviewed it. I can't go back today, and nobody can. We've never accused King of being stupid. We've accused him of being dishonest. They were very clever in the way that they wrote their proposal. I can't go back and show you that they lifted a particular sentence from our proposal. But I can tell you from my experience and the experience of a law enforcement counsel... The trial court, as you know, what, 78 pages or something of material, looked at every line in 74, excuse me, every line of this proposal and scrutinized it with all the care that you apparently didn't apply and found no unfairness whatsoever. Now, once again, how do we deal with that factual finding? There's no competitive disadvantage that the information, even if they had it, was stale and inapplicable to the 2004 procedure. The information contained in the 1999 proposal is proprietary or not proprietary as a matter of law, not as a matter of fact. The court may have made findings with respect to the meaning of this material, but that does not mean that it is a final fact that is found. The contents and the portions of contracts and writings and the legal effect are left open to this court. What's the legal effect of the material that was obtained? You pointed out in your previous cases that even if no proprietary information was actually obtained, it is the conduct of attempting to obtain it that is part of the problem that we have to deal with with the integrity of the procurement system. And my belief is, based on the matrices that we provided to Judge Warren, that she is in error with respect to her finding, and I think the answers are in the matrix. First, with respect to Donald Wilbanks, all of the material obtained from Donald Wilbanks was obtained prior to the release of the proposed. Second, there's an issue about the government release of information in the master's thesis of Henrietta Maples, who was the program manager for this particular program and involved in that evaluation process. One of our second issues, of course, is bias, which I'll talk about shortly. He was subsequently removed as an evaluator. Correct. So in terms of the actual evaluation, it's done by a person other than the person involved. But those people ultimately, after – and I apologize, I'm talking too fast. I really am from Alabama. I do know how to talk slow, but I'm watching this clock. The sequence of events that unfolded in front of the court I thought was essentially phenomenal. First, Mr. Olivier, the government counsel in March, when we were there asking for an injunction, represents to the court that neither Ms. Maples, Mr. Countermuch, or Mr. Botkin ever had anything to do with the evaluation. Then we learned later in August that, yes, they did have something to do with the evaluation. And then we learned that the evaluators reviewed the material that Maples, Botkins, and Countermuch had written. And then we had self-serving affidavits from the evaluators that said, oh, yes, we read that stuff. But it had no effect on our judgment. Botkin is the individual who wrote e-mails and made statements to Abtel employees that he wanted my clients put in jail. And he wrote the incendiary e-mail that – Mr. Riggs, what do you seek as a remedy here? There are two remedies that we seek, Your Honor. First is the disqualification of King Aerospace. We also seek a remand to the Army to take corrective action with respect to this procurement. Meaning what? Are you suggesting that they could put a bankrupt company back in charge if something as important as maintaining an important aircraft? If we are in the position, and I'm sure that we are in the position, we have investors who will come in, put fresh cash into the company or buy the company. Oh, that's a different issue. What I'm looking for, first and foremost, is a statement from this Court as to what the complete and general standard is for disqualification. My problem with Judge Horne's decision is that it places, with respect to this issue, the issue entirely in the discretion of a myriad number of contracting officers. If disqualification is proper, it – But that's not the message you get from Judge Horne's work. You get a careful scrutiny of line by line what was done and what happened and that the contracting officers were not just accepted at face value. That's what 74 pages of work shows, is that she did her work. We disagree with Judge Horne. We believe that she drew very fine lines around conduct, and we believe that conduct is infamous and that that conduct essentially undermines the integrity of the procurement system. Thank you. Thank you, Mr. Riggs. May it please the Court. I would like to reserve five minutes for defendant Intervenor King-Aerospace. They will address briefly several issues. And with respect to the government's argument, ASTEL's appeal raises multiple issues and sub-issues related to information King obtained from current and former ASTEL employees, alleged bias in the source solicitation, and various pricing issues. ASTEL cannot succeed on the merits of any of these issues. We'll come to that. I'm really – what is the government's position that such conduct is permissible if, in retrospect, it can be determined that each particular piece of information was not dispositive or that such conduct is not reviewable as to whether it's permissible or not? Your Honor, if I understand your question correctly, the government – it is not our position to rule on King-Aerospace itself or any actual case ASTEL may have against King. What we are here for is that the contracting officer made a very detailed, very well-reasoned opinion of all areas of information that ASTEL complained about. So you're here to defend the decision which is being appealed from? Yes, Your Honor. Which is that of the court, not the contracting officer. Yes, Your Honor. And the court then reviewed the contracting officer's decision and also reviewed that analysis and further provided additional analysis and basically found that, with respect to those areas of information, they were either not proprietary, they were not competition-sensitive, they were in the public domain. That was what I wanted to ask. The government's position is then that there is no violation of any of the undisputed events which occurred here because the same information could have been learned in some other way? Yes, Your Honor. That is absolutely – with respect to most of the information, that is absolutely the case. I believe the Court of Federal Claims' decision in several instances did not actually necessarily reach that finding, but instead found that, regardless, there was absolutely no competitive advantage to ASTEL. That is my question. My question was, in fact, assuming these contacts on their face certainly raise a serious question. The contacts are made if thereafter the information which is learned by what I will, for the sake of this question, call an improper contact, if it can be determined that that information also either became later publicly available or did not materially affect the contract award, then these contacts are permissible. Is that the government's position? Yes, Your Honor. With respect to the facts of this case, the discretion that is afforded the contracting officer and the Court of Federal Claims – I'm not asking anyone's discretion. I'm asking if the government's position is that the contacts which took place here with current employees and so on, to obtain information which at the time either was not publicly available or can look for an easier path to what was publicly available, we don't know that. But the government's position is that that is permissible behavior. Yes or no? Yes, Your Honor. In this case, because we also have situations where the contact with the employees was permissible, that, for example, King saw resumes or talked to employees. King talked to Kent Blago, Aptell's former owner, through a consulting agreement. He did not actually work on King's proposal. So you're saying the contacts are permissible if they can, after the fact, be justified by the nature of the information which is obtained? Yes, Your Honor. And to the facts of this case, but the government is also – This case has extremely difficult facts. Yes, Your Honor. And some of it is quite clear as to the contacts that were made and the information that was obtained. And as I recall, the government's brief, you did not point to where in the public record the information was available at the time that it was obtained by King. No, Your Honor, we did not. And the reason for that is simply that we were – the government did win below. We were responding to Aptell's brief on appeal. Aptell cited, in our mind, absolutely nothing other than – Your Honor, the government's position is that this conduct is permissible or not. Your Honor, yes. In this case, the government's position is that the contracting officer found that the conduct was not so impermissible as to disqualify King. We are not – Now, is King permissible? Yes, Your Honor. Permissible or impermissible? One or the other. Either someone who wants to bid and enter can or cannot interview current employees, obtain information not available under the Freedom of Information Act, and bid competitively thereafter. Your Honor, in this case, there's actually, I don't believe, evidence that the information that was attained in many cases from talking to employees was at all – was not publicly available at the time, or was at all proprietary at the time. Cases have held – So it doesn't matter whether they seek information that is or is not proprietary? That's always the question. Under the Procurement Integrity Act, isn't it clearly an exception that if the information is otherwise publicly available, there is no violation? Yes, Your Honor. That's part of the law, right? Yes, Your Honor. If it's publicly available or previously disclosed to the public? Yes, Your Honor. So that's your point, is that this is all available information? Yes. Why don't you traders spin on what you're saying? I want to know exactly what the government position is in terms of what contacts – what information can or cannot be sought by a would-be competitor from the incumbent contractor. Your Honor – If it's publicly available, why not give it to public record, which does not happen? Well, Your Honor, in some cases – In this case? In some cases, in this case – Why not give it to public record? Your Honor – The condition is that it's publicly available. Your Honor, in this case, in some cases – in some instances, I believe that it shows that the king did go to the public record. For example, it asked for a FOIA request, and information was released under that. For example, there was information on the internet. There is also clear case law that talking to employees, seeking to hire employees – basically that employees, for example, salary information, resume information, position information, employee opinion, things like that, are not compliantary. That's not what we're arguing about. Actually, Your Honor, some of the information in Avtel – it's my understanding that Avtel claims 33 areas of information that were obtained – became obtained from Avtel, current or former Avtel employees. And additionally, Avtel's 1999 to 2004 proposal. So the government position is that there is no inhibition for a would-be competitor, on the renewal, to go to the current employees and ask whatever they want to ask, and it's up to the current employee as to what they do or don't disclose. No, Your Honor. The government does not go that far, and the government's position is limited simply to this case. And for example, there's evidence in the record that before speaking with any employees, King specifically said, do not provide us proprietary information. We're not asking for that information. Why did they go to the employee? Why not go to the Internet, if you say it's a leader? I can't imagine a sophisticated contractor putting itself in a position of potential criticism, if there are other sources. Your Honor, I don't know why King did this. I don't represent King, Your Honor, but I represent the government. And what we, our position is, is that going back to the contracting officer's well-reasoned opinion, where it broke down the 33 areas of information in Aptel's 1999 to 2004 proposal, made a thorough analysis of what was or wasn't publicly available, what was or wasn't proprietary, what was or wasn't competitive and advantage to King. Did the contracting officer act appropriately? I cannot speak for King Aerospace in this case. Ms. Holt, have you looked into the standing in this case? Does Aptel have standing at this point? Your Honor, based on the December 11th letter that the government received, actually, I apologize, that the contracting officer received that was forwarded to the Department of Justice, I do not believe that Aptel has standing. Well, that's a jurisdictional issue. That is a jurisdictional issue. So this court has an obligation to look into that, so it's fine, right? Yes, Your Honor. One point I was going to raise is that based upon that letter, based upon Mr. Riggs' representations here today, I believe it still sounds to the government that Aptel does not currently have standing, that it is going out of business as that letter speaks to. Now, Mr. Riggs made several statements about he understands from the California attorneys, he understands from Aptel's attorneys. I think at this point, if Mr. Riggs cannot come up and clearly tell this court what the status of Aptel's business is, that this court, we, the government, would ask this court to request additional information, not from Mr. Riggs directly, but from Aptel's real party and interest in this case, which we found out in a filing that Mr. Riggs made last week for the supplemental appendix is actually Insolvency Services Group on behalf of Aptel Services. And the Insolvency Services Group, or the attorney for that group, needs to provide this court with information as to whether or not Aptel does, as to whether or not Aptel is currently in business. The letter that we received talks about them going out of business, the general assignment as an alternative to Chapter 7 bankruptcy. If Aptel is going out of business, we're not in business, they cannot have standing in this case. Even beyond the Chapter 7, isn't there some tax issue? Yes, Your Honor. The suspension is also an issue. The case law is such that if a company is currently suspended, it does not have standing to pursue an appeal. If it takes steps to revive its corporate status, it can then have standing. In this case, Mr. Riggs didn't even respond to that aspect of the letter. If it takes steps, is taking steps sufficient, or does it have to revive the company? I'm sorry, Your Honor. It would have to actually wind up with a revival of its corporate status. If it does not, it does not have standing. Notwithstanding this general assignment issue. Correct, Your Honor. That is my understanding of the case law. The government brought this to the court's attention because it is a standing issue that we believe this court needs to look at. It is clear that the government does not have all that information. We would ask for that to be provided at that time. We would certainly be willing to brief any issues regarding standing that this court would like. It does sound as if supplemental briefing might be in order. Does it sound that way to you, too, Mr. Riggs? Yes, Your Honor. I think we will then request supplemental briefing by each of you within what's a reasonable time. Is two weeks enough? Yes, ma'am. Your Honor, I would just like to clarify. At this point, the government only has the information discussed here today and what we have submitted to the court. We need a show cause order, don't we? Yes, Your Honor. And then there can be a response to the show cause order. Yes, Your Honor. The trial court experience is helpful. Thank you, Your Honor. With respect to the other issues raised in our brief, we will just refer the court to our brief. And I will let King Air and Space have a couple of minutes. Thank you. Thank you, Ms. Holt. Mr. Hewitt. Thank you. Thank you, Mr. Court. I'm not sure how much time I have. Well, the clock shows a couple of minutes, but we do have time. I think the full five minutes will make sense in view of our interruption. Let me ask you a quick question. Just going back to the merits piece. I think in the great brief, they're arguing that the statement by the government and by you that this information is all public information. I think the position taken is it wasn't. And it was a lapse of seven months in between the time he brought it and the time it was made public. Do you agree with that? Is there a dispute there? My point is that it was not source selection information. It didn't matter. It was not proprietary information. And the reason, the fact that something may be claimed to be proprietary does not make it proprietary. The lower court found there was nothing in the Madigan Act proposal that was competitive sensitive. It was stale. If it's not proprietary information, then it's not source selection information. And there's nothing wrong with obtaining that information. In this case, it was not sought. The trial court found that King didn't seek the information. It received the information, but there was nothing competitive sensitive about it. So it doesn't really matter whether or not the information was available otherwise because it would have been releasable under the Freedom of Information Act and it was not proprietary. Did King file a request under the Freedom of Information Act? No, ma'am. No, Your Honor, he did not. But there's nothing, absolutely nothing wrong with talking with former employees and seeking information that is not proprietary. It happens all the time. Were all those employees former at the time of the conversation? Was it what? Were all the employees former employees? No, they're current employees. And there's nothing wrong with talking with current employees. I thought I heard you say, well, there's nothing wrong with talking with former. Well, the one that provided the brief to King Airspace was a former employee. Even though he was the former chief officer. Right. I mean, I don't know what violation it is. If there's anything wrong with talking to a current employee, there's certainly nothing I would think wrong with talking to a former employee. It depends on the subject of the conversation, doesn't it? Yes, and what is disclosed. That's right. But he had no information. Well, I don't know what information he had. The 99 proposal had no competitive sensitive information. It has a trial court bound, and as the Aftel has not indicated, what did he reveal that position? Well, if King didn't need this information. Excuse me? You're saying that King didn't need the information obtained from the employees? That's exactly right. He didn't need the 99 proposal. Then why did they talk to him? They talked to him for advice about the nature of the contract and what it might need to do in order to perform the contract. Which happens all the time. As we pointed out in the numerous cases cited on pages 33 to 36 of the intervener's brief, even offering him to employ, getting letters of commitment from incumbents' employees happens all the time, and there's nothing improper about it. Let me just address, if I may, the fact that the Aftel has not appealed some of these issues. Aftel's statement that it appealed the lower court's decision, and that opens all factors for review to this court. I think that is a very dangerous argument if it were to be accepted by this court. The fact that this court has rules saying that every issue to be decided should be in the statement of issues, that's the rule of virtually all appellate courts in this country. You have to have a point of error, an assignment of error. There was nothing on the part of the court. Prejudice is not mentioned in the statement of issues in Aftel's opening brief. They changed positions on the issue of cost of pricing data requiring a cost analysis, going from the original brief when they said that since cost of pricing data were submitted, there had to be a cost analysis, and asked the question, if it's not cost of pricing data, what is it? And we pointed out in our briefs that the regulations say expressly what it is. It is not to be considered cost of pricing data if there's adequate price competition and should not be certified. When we did that, then the appellant changed his position in the reply brief and said, no, a cost realism analysis should have been performed since it was a cost reimbursement line item in a fixed price contract. And although we don't waive our argument saying that issue is not before the court because it wasn't appealed, that's clearly wrong because a cost realism analysis is entirely different from a cost analysis under the Federal Acquisition Regulation. And there's nothing in the regulation that requires a cost realism analysis of cost reimbursement line items in a fixed price contract. And the case that's cited by appellant and the Comptroller General didn't so hold. The case said that the solicitation in that case required that a cost realism analysis be performed because the result of that analysis was to be used to change another evaluation factor. But it's not required under the regulation. I'm sorry if I didn't answer that. All right. Thank you, Mr. Drew. Mr. Williams. Some information obtained from Mr. Wilbanks was never in the public record in any form, shape, or fashion, particularly the information about the salaries that we pay our quality assurance representative and several other employees. That information was obtained in the interview of January the 28th, information about what we paid for our health insurance and who we used for our health insurance, who we used for our suppliers. It's interesting to note that early in this process in the Texas case, King stipulated, and in this case, King stipulated to the fact that it wanted to protect the information it had obtained from other bidders because it might give a competitive advantage to other bidders. King obtained this information. They wanted the use of this information, but they didn't want other bidders to have that information. In the final analysis, this is a case, in my judgment, about conduct. We'll do the briefing on standing as you all will request, and I'd be happy to come back if there are any questions with regard to that. I have no further rebuttal unless you all have some questions for me. Thank you, Mr. Reeves. Thank you, Your Honor. Now, in terms of the standing issue, may we request the problem in order to show cause on behalf of the government, I suppose, for justifying the standing within one week? I think that Mr. Reeves would have to show cause why there would be no dismissal of the case for lack of standing, and so you'd have to bring forth the corporate documents showing that you are in business still within a week. Your Honor, I'm dealing with California lawyers who I have never personally met. I've talked to them over the telephone. I would request that the court give me two weeks. If the difficulty would go immediately, the impossible takes a little longer. All right. See what you can do in two weeks. We appreciate the assistance. I'll be in immediate contact with the court. Then after those documents are filed, we will then have another two weeks for any filing of briefs, explaining the materials, whatever else is needed to allow us to resolve the question. Thank you, Your Honor. Thank you. This is then under submission, at least, to the extent that we have it before us.